Citation Nr: 1434277 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 11-34 086 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California


THE ISSUES

1. Entitlement to an effective date prior to August 14, 2012 for the award of service connection for coronary artery disease.

2. Entitlement to an initial rating in excess of 30 percent for coronary artery disease.

3. Entitlement to service connection for a right wrist disorder, to include gout and arthritis, to include as due to herbicide exposure. 

4. Entitlement to service connection for a left knee disorder, to include gout and arthritis, to include as due to herbicide exposure. 

5. Entitlement to service connection for a right knee disorder, to include gout and arthritis, to include as due to herbicide exposure. 

6. Entitlement to service connection for osteoarthritis other than of the right wrist and bilateral knees, to include as due to herbicide exposure. 

7. Entitlement to service connection for a gastrointestinal disorder, to include as due to herbicide exposure.

8. Entitlement to service connection for ischemia/blood restriction of the legs.


REPRESENTATION

Veteran represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

Kristy L. Zadora, Counsel


INTRODUCTION

The Veteran served on active duty from November 1947 to March 1955 and from September 1955 to January 1971.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from August 2010 and June 2013 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California.

In a June 2013 rating decision, the agency of original jurisdiction (AOJ) awarded service connection for coronary artery disease and assigned an initial 30 percent rating, effective August 14, 2012. In addition, the Veteran's claim for service connection for ischemia/blood restriction of the legs was denied. The Veteran subsequently filed a notice of disagreement as to the claim for service connection for ischemia/blood restriction of the legs as well as the assigned effective date and initial rating for coronary artery disease. However, a statement of the case as to these claims has not yet been issued and these claims are addressed in the remand portion below. 
In January 2014, the Board remanded the claims for service connection for a right wrist disorder, a left knee disorder, a right knee disorder, osteoarthritis other than the right wrist and bilateral knees, and a gastrointestinal disorder for further development.

In May 2014, the Veteran's representative waived the 30 day waiting period following the issuance of the May 2014 supplemental statement of the case (SSOC) and requested that the Board proceed with adjudicating his case.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. The Board notes that, in addition to the VBMS, there is a separate electronic (Virtual VA) claims file associated with the Veteran's claims. A review of the Virtual VA claims file reveals documents duplicative of those contained in the VBMS paperless claims processing system.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The appeal is REMANDED to the AOJ. VA will notify the Veteran if further action is required.


REMAND

Although the Board regrets the additional delay, a remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide claims on appeal so that he is afforded every possible consideration. In addition, where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance. Stegall v. West, 11 Vet. App. 268, 271 (1998).

With regard to the Veteran's claims for service connection for a right wrist disorder, a left knee disorder, a right knee disorder and osteoarthritis other than of the right wrist and bilateral knees, the Board remanded these claims in January 2014 in order to obtain etiological opinions. Specifically, the Board noted the Veteran's contentions that his right wrist problem began in service and that his general claim for service connection for osteoarthritis was related to prolonged sitting during service. The Board further noted that the service treatment records documented a right knee injury in May 1968 and that a January 2011 VA examiner did not offer an etiological opinion as to the diagnosed degenerative arthritic changes of the right wrist and bilateral knees. The examiner was then instructed to provide an etiological opinion for each diagnosed right wrist, bilateral knee and spine disorder as well as for any joint where osteoarthritis was present, to include whether such disorders were related to service or whether arthritis manifested in each identified joint within one year of service separation. Further, the examiner was instructed to consider whether such disorders were related to the Veteran's prolonged sitting as a result of his military duties and/or his in-service exposure to herbicides.

Such an opinion was obtained in March 2014. The VA examiner opined that the Veteran's claimed conditions were less likely than not incurred in or caused by the claimed in-service injury, event, or illness as his service treatment records contained no complaints of chronic back pain, right wrist pain or injury, or ongoing knee pain; no further rationale was provided. The Board notes that an examination is inadequate where the examiner relies on the absence of evidence of disability in the service treatment reports, and does not account for competent lay testimony as to continuity of symptoms, to provide a negative opinion. See Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007). Moreover, the examiner did not address whether the Veteran's claimed disorders were related to the prolonged sitting he did as a result of his military duties or his in-service exposure to herbicides, nor did she address whether osteoarthritis in any joint had manifested within one year of service separation. Additionally, in June 2014 correspondence, the Veteran argued that his gouty arthritis, for which service connection has been awarded in his right great toe, affects such joints. Therefore, an addendum opinion should be obtained.

With regard to the Veteran's claim for service connection for a gastrointestinal disorder, the Board also remanded this claim in January 2014 to obtain an etiological opinion. The Board noted the Veteran's in-service gastrointestinal complaints and his various diagnosed gastrointestinal disorders, including peptic ulcer disease, hiatal hernia, irritable bowel syndrome and gastroesophageal reflux disease (GERD). The examiner was instructed to provide an etiological opinion for each diagnosed gastrointestinal disorder, to include whether such disorder was related to the Veteran's in-service gastrointestinal complaints or his in-service exposure to herbicides.

Such an opinion was obtained in March 2014. The VA examiner diagnosed the Veteran with GERD, but also determined that the Veteran's current complaints were not consistent with an intestinal condition diagnosis. However, an assessment of a hiatal hernia was noted in September 2010. With regard to claims of service connection, the current disability requirement is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Here, although a diagnosis of a hiatal hernia or other intestinal condition was not found during the most recent VA examination, the private treatment record dated during the course of the appeal provides a current diagnosis of a hiatal hernia. Therefore, without a determination that the September 2010 evaluation is inaccurate, there is evidence of a "current" disability during the appeal period in question. Moreover, while the VA examiner provided an etiological opinion for the Veteran's GERD and noted that this condition was not a presumptive condition related to herbicide exposure, the examiner did not address whether herbicide exposure could have directly caused the claimed condition. The Board must consider whether the Veteran is entitled to service connection for a gastrointestinal disorder on a direct basis. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In light of these deficiencies, such an addendum opinion should be obtained.

Additionally, in June 2014 correspondence, the Veteran alleged that there may be additional, relevant records that have not yet been obtained, to include Riverside Medical Clinic and Riverside County Hospital in Moreno Valley in October 2005, March Air Force Base (AFB) from 1985 to 1995, David Grant Medical Facility at Travis AFB from February 1971 to April 1973, and Lockheed Aircraft International-AG from January 1975 to June 1985. Therefore, while on remand, the Veteran should be requested to identify all such records and, if necessary, complete authorization forms so as to allow VA to request any outstanding records from such facilities. 

Finally, with respect to the Veteran's claims for an increased initial rating and earlier effective date for coronary artery disease as well as the claim for service connection for ischemia/blood restriction of the legs, the Board notes that a rating decision issued in June 2013 awarded service connection for coronary artery disease and assigned an initial 30 percent rating, effective August 14, 2012. This rating decision also denied the claim for service connection for ischemia/blood restriction of the legs. Thereafter, in March 2014, the Veteran entered a notice of disagreement as to the assigned effective date and initial rating for coronary artery diseases as well as the denial of service connection for ischemia/blood restriction of the legs. When there has been an initial RO adjudication of a claim and a notice of disagreement as to its denial, the claimant is entitled to a statement of the case. See 38 C.F.R. § 19.26. Thus, remand for issuance of a statement of the case on these issues is necessary. Manlincon v. West, 12 Vet. App. 238 (1999). However, these issues will be returned to the Board after issuance of the statement of the case only if perfected by the filing of a timely substantive appeal. See Smallwood v. Brown, 10 Vet. App. 93, 97 (1997). 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Provide the Veteran with a statement of the case regarding the issues of entitlement to an effective date prior to August 14, 2012, for the award of service connection for coronary artery disease, an initial rating in excess of 30 percent for coronary artery disease, and service connection for ischemia/blood restriction of the legs. Advise the Veteran of the time period in which to perfect his appeal. If the Veteran perfects his appeal of these issues in a timely fashion, then return the case to the Board for its review, as appropriate.

2. Request that the Veteran identify any outstanding records referable to his claims for service connection for a right wrist disorder, a left knee disorder, a right knee disorder, osteoarthritis other than the right wrist and bilateral knees, and a gastrointestinal disorder. After obtaining any necessary authorization forms, obtain any outstanding records, to include those from Riverside Medical Clinic and Riverside County Hospital in Moreno Valley in October 2005, March AFB from 1985 to 1995, David Grant Medical Facility at Travis AFB from February 1971 to April 1973, and Lockheed Aircraft International-AG from January 1975 to June 1985. All reasonable attempts should be made to obtain such records. 

For federal records, if any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e).

For private records, make at least two (2) attempts to obtain records from any identified sources. If any such records are unavailable, inform the Veteran and afford him an opportunity to submit any copies in his possession.


3. After obtaining all outstanding records, return the claims file, to include a copy of this remand, to the March 2014 VA examiner for an addendum opinion as to the nature and etiology of the Veteran's right wrist, bilateral knee, and osteoarthritis disorders. If the examiner who drafted the March 2014 opinion is unavailable, the opinion should be rendered by another appropriate medical professional. The need for another clinical examination is left to the discretion of the medical professional offering the addendum opinion.

Following a review of the record, the examiner should address the following questions:

 (A) Identify all current diagnoses of the right wrist and bilateral knees, to include gout and arthritis. 

 (B) Identify all joints where osteoarthritis is present, to include the spine. 

 (C) For each diagnosed right wrist, bilateral knee, and spine disorder, and any joint where osteoarthritis is present, the examiner should offer an opinion as to whether such is at least as likely as not related to the Veteran's military service, to include wrist difficulties resulting from his service while working on the flight line, a right knee injury in May 1968, prolonged sitting as a result of his military duties, and/or his in-service exposure to herbicides. 

(D) For each joint where osteoarthritis is present, to include the right wrist, bilateral knees, and spine, the examiner should offer an opinion as to whether arthritis manifested in each identified joint within one year of his service separation in January 1971 and, if so, to describe the manifestations.

In offering such opinions, the examiner should consider the Veteran's argument that his gouty arthritis, for which service connection has been awarded in his right great toe, affects such joints. The examiner must provide a complete rationale for all opinions and conclusions reached.

4. After obtaining all outstanding records, return the claims file, to include a copy of this remand, to the March 2014 VA examiner for an addendum opinion as to the nature and etiology of the Veteran's gastrointestinal disorder. If the examiner who drafted the March 2014 opinion is unavailable, the opinion should be rendered by another appropriate medical professional. The need for another clinical examination is left to the discretion of the medical professional offering the addendum opinion.

Following a review of the record, the examiner should address the following questions:

 (A) Identify all current diagnoses pertaining to the gastrointestinal system. The examiner should identify all disorders that have been present at any time since March 2010. In this regard, the examiner should reconcile the finding at the March 2014 examination that there is no intestinal condition present with the September 2010 diagnosis of a hiatal hernia.

 (B) For each diagnosed gastrointestinal disorder, the examiner should offer an opinion as to whether such is at least as likely as not related to the Veteran's military service, to include his in-service gastrointestinal complaints (i.e., September 1965 for pressure in the chest that could be indigestion and November 1969 for diarrhea), and/or his in-service exposure to herbicides. 

The examiner must provide a complete rationale for all opinions and conclusions reached.

5. After completing the above actions, to include any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims should be readjudicated based on the entirety of the evidence. If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the U.S. Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).


_________________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2013).